**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JOANNE MILLER,
individually and on behalf
of all others similarly situated,

                    Plaintiff,

vs.

SCHWAN'S COMPANY; SCHWAN'S
CONSUMER BRANDS, INC.; SCHWAN'S
FOOD SERVICE INC.; and SFC GLOBAL
SUPPLY CHAIN, INC.

                    Defendants.

Case No. 3:19-cv-00501-TJC-JBT

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

COMES NOW, Defendant, Schwan's Consumer Brands, Inc., by and through its

undersigned counsel, and files this Motion to Dismiss all claims filed by the Plaintiff, Joanne

Miller, for failure to state a claim, and its incorporated Memorandum of Law, stating the

following in support:

**INTRODUCTION AND BASIS FOR RELIEF**

This case is about whether the truthful promotion of one ingredient in a food product

creates a variety of implications about other ingredients in and characteristic of that product.

Plaintiff Joanne Miller ("Plaintiff" or "Miller") alleges that it does.  Plain language, common

sense, FDA regulations, and false-advertising case law all reject her contention.  Plaintiff has

filed a five-count Complaint, seeking damages and injunctive relief, for a violation of the

Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), Negligent Misrepresentation, Breach of Express Warranty and Implied Warranty of Merchantability (as one count), Fraud, and Unjust Enrichment.

This lawsuit is based primarily on a single, factually true, statement appearing on the label of Mrs. Smith's® Original Flaky Crust Pies and Cobblers (the "Product" or "Products"), sold by Defendant Schwan's Consumer Brands, Inc. ("Schwan's"). That statement is "Made with Real Butter." Plaintiff does not dispute that Mrs. Smith's® Original Flaky Crust Pies are made with real butter. Nonetheless, all of Plaintiff's claims rely on the theory that by stating the Products are "Made with Real Butter," Schwan's has falsely implied that they contain some minimum amount of butter, which Plaintiff does not specify, but which is greater than the amount that her unfounded speculation and amateur chemical analysis leads her to allege is actually there. Plaintiff also alleges several other claims, based on further speculation, assumptions, improper calculations, and unwarranted inferences, about how the fillings of Mrs. Smith's® Original Flaky Crust Pies and Cobblers are formulated, that are not even superficially supported or implausible.

Plaintiff's claims, which invoke Florida statutory and common law, should be dismissed for several reasons:

**First**, Plaintiff has not plausibly alleged how the statement "Made with Real Butter" is likely to deceive a reasonable consumer into believing Schwan's Products contain any particular amount of butter. Plaintiff never alleges what that particular implied amount of butter would be. She also never plausibly alleges that the Products contain less butter than whatever that amount is, because her method of deducing the amount of butter is unscientific,

uninformed and speculative.  Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), as applied previously by courts to allegations of false advertising, Plaintiff's Complaint fails the plausibility test and should be dismissed.

**Second**, Plaintiff attacks Schwan's FDA-mandated ingredient statement on the packaging of its pies and cobblers, including Schwan's identification of ingredients, ordering of ingredients, and changes to its identification of ingredients over time.  These allegations are so deeply and obviously within the exclusive authority of the FDA that Plaintiff even cites FDA regulations as her basis for arguing that Schwan's ordering of ingredients is "unlawful."  (Dkt. 48 ¶ 55 and n.5.)  Much of the Complaint is nothing more than an attempt to enforce privately the Food, Drug and Cosmetic Act through a lawsuit based on state laws, which is explicitly preempted.

**Third**, Plaintiff fails to allege that she purchased any specific Product, and because FDUTPA plaintiffs have standing only with respect for the specific Products that they purchased, Plaintiff has failed to establish her standing to sue over any Product.

**Fourth**, Plaintiff fails to allege a plausible theory of injury or damages, which would require that Schwan's be able to charge a market-wide price premium for each of the misleading representations Plaintiff alleges.  Plaintiff does not allege which Products she bought, exactly what she paid for them, or what lower-priced market alternatives would have forced Schwan's to charge a lower price for the Products absent the challenged representations, and what that price would be.

**Fifth**, Plaintiff's negligent misrepresentation claim is inappropriate.  The Plaintiff has failed to allege the specific relationship between the parties that would give rise to a duty of care in communicating with Plaintiff, and therefore it should also be dismissed.

**Sixth**, Plaintiff's warranty claims must be dismissed because she cannot allege Schwan's made any express warranties relating to the amount of butter or any other ingredient.  Moreover, her breach of implied warranty of merchantability claim must fail because Plaintiff alleges only economic injury, which is not cognizable under her implied warranty claims without privity of contract.

**Seventh**, Plaintiff's unjust enrichment claim is duplicative of her fraud and false advertising claims and therefore should also be dismissed.

**Eighth**, Plaintiff's fraud claim is not pled with the requisite particularity, nor can the elements of fraud be satisfied under the facts pled by Plaintiff.

**Finally**, Plaintiff has no standing to seek injunctive relief because she alleges that she is now aware of the alleged deceptive practices and she therefore is in no danger of being deceived by them into overpaying for the Products again.

For these reasons, and as further explained below, Defendant respectfully requests this Court dismiss this action in its entirety with prejudice.

### **BACKGROUND**

Defendant Schwan's Consumer Brands, Inc. ("Schwan's") makes the Mrs. Smith's® line of frozen desserts, including Mrs. Smith's® Original Flaky Crust Pies and Cobblers (the "Product" or "Products").  Mrs. Smith's® was the first, and is still the only, major national brand of frozen dessert pies and cobblers to incorporate real butter into its crust recipe.  In

recent years, Mrs. Smith's® also has revised its pie and cobbler fillings to simplify their ingredients and to eliminate artificial sweeteners, dyes, or flavors.  This innovation and market leadership has resulted in delicious frozen desserts that are popular with consumers.

Packaging for Mrs. Smith's® Original Flaky Crust Pies contains, among other things, the claims "Made with Real Butter" and "No Artificial Sweeteners, Dyes or Flavors."  (Dkt. 48 ¶ 2.)  The "No Artificial Sweeteners, Dyes or Flavors," claim, but *not* the "Made with Real Butter" claim, is made on Mrs. Smith's® Cobblers (Dkt. 48 ¶ 57.)

In addition, labeling for the Products displays an ingredient statement, which discloses all ingredients contained in the product.  For example, the ingredient list for Mrs. Smith's® Original Flaky Crust Dutch Apple Pie appears as follows on the product label, as reproduced in Plaintiff's Complaint (Dkt. 48 ¶ 23):



**INGREDIENTS:**
**FILLING:** APPLES, WATER, SUGAR, MODIFIED FOOD STARCH, CORN SYRUP, BROWN SUGAR, SALT, SPICE, XANTHAN GUM.
**CRUST:** WHEAT FLOUR, SHORTENING BUTTER BLEND (PALM OIL, BUTTER [CREAM, SALT]), PALM OIL, WATER, SOYBEAN OIL, SALT, DEXTROSE, YEAST, MONO- AND DIGLYCERIDES, APPLE JUICE CONCENTRATE.

The statement "Made with Real Butter" is true and accurate.  The Products are made with real butter, as set forth in the ingredient list.  Plaintiff does not dispute this fact.

Plaintiff alleges in spite of the foregoing, that the Mrs. Smith's® package misled her and misleads consumers into believing that the Product crusts contain a "significant, non-trivial amount of butter" (Dkt. 48 ¶ 106) and that in the Product crusts, "butter was present in an amount significant to produce the attributes he/she associates with butter" (Dkt. 48 ¶ 105).

She also alleges that, contrary to their packaging representations and ingredient statement, the Products' fillings contain citric and/or ascorbic acid – allegedly artificial flavors – that are undisclosed or somehow concealed in their ingredient statements.  (Dkt. 48 ¶¶ 81-86).

## ARGUMENT

Plaintiff's claims are variously preempted, facially insufficient, duplicative, and/or unavailable to this Plaintiff.

Each cause of action alleged by Plaintiff requires a showing of deception or misrepresentation and therefore, the following arguments are applicable to all causes of action.  Plaintiff's claims about the alleged falsity or deceptiveness of the Products' labeling and packaging fail as a matter of law because it is not plausible that a reasonable consumer would be misled into any false belief by them.  Based on the facts pled by Plaintiff, serving as the factual predicate for all of her claims, there is no plausible basis to suspect that Schwan's Products misrepresent their ingredients, expressly or by implication.  Thus, each of Plaintiff's claims fail, for the reasons set forth below:

### I.    Legal Standard

A court is required to accept plausible factual allegations as true for purposes of considering a Rule 12 motion to dismiss, but not implausible ones.  Plaintiff relies on several implausible allegations about how a reasonable consumer would interpret the Products' packaging.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556.   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556-57.   In evaluating the plausibility of a complaint theory under Rule 12, "courts may make reasonable inferences in a plaintiff's favor, but they are not required to draw the plaintiff's inference." *Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir.2009).

In evaluating false-advertising cases on a Rule 12(b)(6) motion to dismiss, a court considers whether the plaintiff has alleged facts sufficient to make it plausible that the alleged conduct would mislead a reasonable consumer acting reasonably under the circumstances. *See Molina v. Aurora Loan Servs., LLC,* 635 F. App'x 618, 626-27 (11th Cir. 2015) (dismissing FDUTPA claim because plaintiff did not allege any deception that was likely to deceive a reasonable consumer); *Jsurgical, Inc. v. Synergy Health*, No. 8:18-cv-1022-T-30JSS, 2018 U.S. Dist. LEXIS 224281, at *1 (M.D. Fla. Sep. 21, 2018) (same, holding "Plaintiff's complaint fails to state any claim that is plausible on its face"); *Federal Trade Commission v. Quincy Biosciences*, No. 17–cv-124 (LLS), slip op. at 10-12  (S.D.N.Y. Sept. 28, 2017) (dismissing a false-advertising case brought under the same requirement in the Federal Trade Commission Act, finding that "the complaint does not allege facts from which it can reasonably be inferred that the representations at issue are false or unsubstantiated").

Although dismissal of false-advertising cases on this ground was once rare, a recent rash of meritless lawsuits has created a growing body of Rule 12 case law dismissing

challenges to advertising claims because they do not plausibly allege conduct that would deceive a reasonable consumer. *See, e.g., Molina v. Aurora Loan Servs.,* 635 F. App'x 618, 626-27 (11th Cir. 2015); *Kuenzig v. Kraft Foods, Inc.*, No. 8:11-cv-838-T-24 TGW, 2011 U.S. Dist. LEXIS 102746, (M.D. Fla. Sept. 12, 2011) (dismissing claim that "percent-fat-free" indication that was adjacent to a "calories" indication on the front of lunch meat product packaging was deceptive and misleading); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (beer did not mislead reasonable consumers that it was of Japanese origin where its Canadian origin was clearly stated); *Mantikas v. Kellogg Co.*, No. 16-cv-2552, 2017 U.S. Dist. LEXIS 83311, at *11-12 (E.D.N.Y. May 31, 2017) ("made with whole grain" claim did not reasonably imply that the product was not also made with enriched white grain, where this was listed in ingredient statement); *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211-12 (E.D.N.Y. 2016) (unused volume of pill bottle did not deceive consumers as to number of tablets where the table count was clearly disclosed on the bottle).

Plaintiff's theory of liability is built entirely on such allegations that "[stop] short of the line between possibility and probability of 'entitlement to relief.'" *Quincy Bioscience,* No. 17–cv-124 (LLS), slip op. at 12 (S.D.N.Y. Sept. 28, 2017), quoting *Iqbal,* 556 U.S. at 678. After stripping away the counter-scientific, conclusory, implausible, and outright frivolous allegations, there is nothing left but the truthful statement that the Products contain real butter.

## II.     Under the Plausibility Standard, the Plaintiff Fails to State a Claim (Applicable to All Causes of Action)

### A.     The Complaint Does Not Plausibly Allege that the Amount of Butter in the Products Is "Trivial"

Plaintiff alleges that the packaging claim of "Made with Real Butter" implies that butter is present in a "significant, non-trivial" amount, never defining in any quantifiable or provable way what that means.  (Dkt. 48 ¶ 107.)  This is not plausibly a reasonable inference from the simple statement "Made with Real Butter," especially accompanied by the ingredient statement that accurately sets forth the ingredients in order of predominance.  It is highly plausible, in contrast, that a reasonable consumer would look at the "Made with Real Butter" labeling claim and accept it for whatever value the presence of butter has for that particular consumer.  If a consumer were curious as to the proportion of butter relative to other ingredients, any reasonable consumer knows exactly where to look for this information. Given that the "Made with Real Butter" claim itself provides no information about the amount or predominance of butter in the Products, any reasonable consumer will check the ingredient statement.

Even if the Products' "Made with Real Butter" statement did imply that the Products contain a significant or non-trivial amount of butter, Plaintiff never plausibly pleads any facts in support of her contention that the Products contain only an "insignificant, nominal amount" of butter – allegations that are, ultimately, unprovable expressions of opinion. These allegations are based on a mash-up of amateur food chemistry, improper ingredient calculations, irrelevant references to other manufacturers' products, and wild speculation.

Plaintiff attempts to deduce the amount of butter in the Products from the fact that no Vitamin A is listed in the Products' FDA-mandated Nutrition Facts panel. Plaintiff inaccurately assumes that Schwan's must report all Vitamin A in the Products, combines this assumption with the non-authoritative estimate of butter's Vitamin A content in the USDA Food and Nutrition Database, (Dkt. 48 ¶¶ 30-33), and then applies these unsupported assumptions to her baseless allegations about the "commonly used" ratio of flour to fat in pastry (Dkt. 17 ¶¶ 34-35.) This is not an accepted, scientifically valid, or reasonable method of deducing the amount of butter in the Products. Plaintiff's improper calculations and uninformed speculation, without any facts in support, cannot produce anything approaching an accurate estimate of the butter content of the Product's crusts—nor supporting her proposition that some amount is required or necessary. Plaintiff also does not provide any plausible basis, under *Twombly*, for the allegations that the Products contain only a "trivial" amount of butter, which therefore should be dismissed.

Thus, Schwan's moves for dismissal on the facial insufficiency of the Complaint, without introducing further evidence, but it is worth noting that Plaintiff's counsel is aware, from discovery of primary sources, i.e., Schwan's Product recipes, in a different action in the U.S. District Court for the Eastern District of New York, from which this case was severed and transferred, that there is much more butter in the Products' crust than Plaintiff alleges. Plaintiff had the opportunity to adjust or amend her allegations before the filing of this severed action. Instead, Plaintiff chose to open this matter, pleading quantities of butter that her counsel knows is contradicted by Schwan's formulations (i.e., that butter constitutes "1.5% at most" or "at most 2%" of the fats in the crust (Dkt. 48 ¶¶ 36, 45, 106). Schwan's

will take up the issue of whether this Complaint was pled in good faith at a later time, if appropriate.

**B.      The Complaint Does Not Plausibly Allege that the Product Packaging Implies the Presence of Any Amount of Butter**

Reasonable consumers know that a food's ingredient statement lists ingredients in descending order of amount.  A reasonable consumer who reads the ingredient statement:

> CRUST:   WHEAT FLOUR, SHORTENING BUTTER BLEND (PALM OIL, BUTTER [CREAM, SALT]), PALM OIL, WATER, SOYBEAN OIL, SALT, DEXTROSE, YEAST, MONO- AND DI-GLYCERIDES.

will learn, at a minimum, that (1) there is more palm oil than butter within the shortening butter blend, and (2) besides the shortening butter blend, additional palm oil and soybean oil also are present in the crust.  Thus, a reasonable consumer who has any interest in the matter cannot be under the illusion that the fats in the crust of the Products are wholly or predominantly butter.

Even if Plaintiff's factually unsupported and improper calculations of the amount of butter in the Products' crust were correct, the Amended Compliant should thus still be dismissed, because the Products' packaging does not represent, expressly or by implication, that the Products contain whatever Plaintiff deems a "significant, non-trivial" amount of butter.  This is even more true of the cobbler Products than of the pies, because the cobblers do not make a "Made with Real Butter" claim, but merely list butter in their ingredient statements.  (Dkt. 48 ¶ 57.)

**III.    Plaintiff's Claims that Schwan's FDA-Mandated Ingredient Statement Are Improperly Constructed Are Preempted (Applicable to All Causes of Action)**

The Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), provides a comprehensive set of food labeling requirements under federal law. *See* 21 U.S.C. §§ 343 *et seq*. The many subsections of 21 U.S.C. § 343 establish the conditions under which food is considered "misbranded." Section 343(r) of the FDCA addresses claims in food labeling, including nutrient and ingredient content claims that either "expressly or by implication . . . characterize the level of any nutrient." The FDCA also contains a broad preemption provision, prohibiting state law that directly or indirectly establishes a "requirement" for food labeling that is not "identical" to the requirements set forth in the FDCA. 21 U.S.C. § 343-1; *see also Mathews v. Minute Maid Co.*, 124 F. Supp. 3d 1226, 1235 (N.D. Fla. 2015); *Ackerman v. Coca-Cola Co.*, No. 09-cv-0395, 2010 U.S. Dist. LEXIS 73156, at *8-9 (E.D.N.Y. July 21, 2010). "Where federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements." *In re Pepsico, Inc. Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008); *see also Mathews*, 124 F. Supp. 3d at 1236.

The Court need not reach the question of the plausibility regarding the allegations about FDA labeling, because nothing is more centrally preempted by the FDCA than the presentation of FDA-mandated labeling elements, such as the ingredient statement, which is the subject of extensive regulation on the identification and ordering of ingredients. Plaintiff improperly lodges two separate, direct attacks on the presentation of the FDA-mandated

ingredient statement used on the Products in support of her claims.  One of these concerns the crusts of the Products, which include the composite ingredient "shortening butter blend (palm oil, butter [cream, salt])."  Plaintiff alleges that, without changing the recipe of the pie Products, the order of ingredients was rearranged in a manner that is allegedly misleading because "because it gives consumers the impression that the pies contain more butter than there is."  (Dkt. 48 ¶ 41.)  Plaintiff's other allegation concerns the fillings of the pie and cobbler Products.  As to these fillings, Plaintiff alleges that, again without changing the recipe for the products, Schwan's began concealing the presence of citric acid and/or ascorbic acid by omitting these ingredients from the ingredient statement or by characterizing them as "spices" (even though most of the Products do not list a "spice" ingredient.  (Dkt. 48 ¶ 85.)

All of Plaintiff's allegations concerning the presentation of Schwan's ingredient statements, as well as her allegations concerning the actual amount of butter and the presence or absence of citric/ascorbic acid in the Products, are without even the slightest basis in factual support.  Plaintiff tips the fact that she is attempting improperly to privately enforce the FDCA by framing her allegations in FDA jargon.  Plaintiff alleges, for example, that ingredients must be ordered in "descending order of predominance by weight" (Dkt. 48 ¶ 43) and identified by their "common and usual name" (Dkt. 48 ¶¶ 50, 55).  Plaintiff even cites FDA regulations as her basis for the allegations that Schwan's practices are "not lawful." (Dkt. 48 ¶ 55 and p. 11, n.5.)  These attempts by Plaintiff to substitute her own judgment about what constitutes proper identification of ingredients for that of the FDA, and to substitute state deceptive-practices law for the FDCA, are preempted and all of her claims,

which are based upon these allegations, must be dismissed.  *See Mathews*, 124 F. Supp. 3d at 1234; *Patane v. Nestlé Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 389 (D. Conn. 2018).

## IV.   Plaintiff Lacks Standing to Sue over Any Products Not Purchased (Applicable to All Causes of Action)

Plaintiff's Complaint fails to adequately allege which of the pies and cobbler products the representative Plaintiff purchased.   The Complaint merely states, "In 2017, plaintiff purchased one or more of the Pies and Cobblers for personal consumption, for no less than $4.99, excluding tax, at supermarkets located within their respective counties."  (Dkt. 48 ¶ 103.)

Plaintiff's pleading failure is not just a technical defect; it also defeats Plaintiff's standing to sue.   In the Eleventh Circuit, it is settled law that "one named Plaintiff must establish Article III standing for each class subclaim."  *Toback v. GNC Holdings, Inc.,* No. 13-80526-CIV, 2013 WL 5206103, *4 (S.D. Fla. Sept. 13, 2013) (citing *Prado-Steiman v. Bush,* 221 F.3d 1266, 1279-80 (11th Cir. 2000)).  "A named plaintiff in a consumer class action lacks standing to challenge a non-purchased product because there is no injury-in-fact as to that product, even if he purchased a substantially similar product." *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1393 (S.D. Fla. 2014) (citing Eleventh Circuit cases and permitting only claims for products actually purchased).   Here, Plaintiff does not allege with particularity, which, if any, of the Products were purchased.   Consequently, she and the putative class lack standing to sue with respect to any products not actually purchased, regardless of whether any putative class members are alleged or believed to have bought them.  *See id.*  Thus, these claims must be dismissed.

Moreover, these allegations are further insufficient to meet Plaintiff's Rule 9 burden as it relates to Plaintiff's claims sounding in fraud.  In *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1382 (S.D. Fla. 2014), the plaintiff succeeded in meeting its pleading burden only because it pled "(1) which Plaintiffs purchased (2) which specific food items that were manufactured, marketed, advertised, distributed, and sold by Defendants, (3) where the Plaintiffs purchased them and (4) when."  As an example, plaintiffs in that case pled:

> Plaintiff Garcia has purchased Go Lean Crunch®, and the snack bars Kashi Go Lean® Crunchy! All Natural Protein and Fiber Bars (chocolate peanut butter), and Kashi Go Lean® Roll! All Natural Protein and Fiber Bars (chocolate peanut butter) during the Class period, from a Publix Supermarket located at 2270 SW 27th Avenue, Miami, Florida 33145 as well as the Whole Foods located at 10th and Alton in Miami Beach, Florida, 33139.

*Id.*  The *Garcia* plaintiffs further pled which alleged misrepresentations they relied on, and what they thought those misrepresentations meant.  *See id.*  None of these necessary details are pled in this case.

### A.    Plaintiff's "Premium Price" Theory is Neither Plausible Nor Adequately Pled

As elements of her claim, Plaintiff must plead the nature of her injury and damages. Under the heightened Rule 9(b) pleading standard applicable to the Plaintiff's claims here, this element, and "what the defendants obtained as a consequence of the fraud," must be pled with particularity.  *Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2015 U.S. Dist. LEXIS 189625, at *21-22 (S.D. Fla. Mar. 20, 2015).  Under Plaintiff's FDUTPA claims, for instance, the only monetary damages available to Plaintiff and the other purported class members are actual damages arising from a price premium that the defendant is able to charge in the marketplace by virtue of the allegedly false claim.  *See, e.g.*, *Smith v. Wrigley*,

663 F. Supp. 2d 1336, 1340-41 (S.D. Fla. 2009).   Plaintiff must therefore allege, with specificity, that Schwan's charged a market premium for the Products by virtue of the "made with real butter" and "no artificial flavorings" claims, and that Plaintiff purchased Products at this premium.

Plaintiff wholly fails to allege that Schwan's was able to charge any price premium, let alone with the required specificity.   The Complaint contains allegations that "Plaintiff purchased these Products because he/she/they intended to consume products which possessed the attributes and features described herein and opted against buying less expensive products not so represented" and that "Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations."   (Dkt. 48 ¶¶ 107-108.)   This is so boilerplate that Plaintiff did not even bother to select the correct pronoun from "he/she/they" or specify what attributes she supposedly sought in purchasing the Products.   These paragraphs could literally be pasted into any false-advertising lawsuit, about any product, without changing a word.

Moreover, Plaintiff did not allege which Products Plaintiff purchased, what price Plaintiff paid for the Products, what price Plaintiff considered paying for alternative products before purchasing the Schwan's Products, or what lower price Plaintiff believes Schwan's would have charged for its Products in the absence of any misleading representations. Plaintiff alleges that "In 2017, plaintiff purchased one or more of the Pies and Cobblers for personal consumption, for no less than $4.99, excluding tax, at supermarkets located within their respective counties [*sic*]."   (Dkt. 48 ¶ 103.)   Plaintiff's allegation that she paid "no less

than $4.99" is not an exact price, and there is no allegation that any comparable frozen pie or cobbler was available for any lower price.

Finally, Plaintiff does not allege plausibly that the complained-of representations could have enabled Schwan's to charge any price premium as to any of the specific Products. Consider, for example, a Mrs. Smith's® Cobbler Product.  The Cobblers, as Plaintiff concedes, do not bear any front-of-pack emblem saying "made with real butter."  (Dkt. 48 ¶ 57.)  Yet, Plaintiff concedes that the Cobbler products still mislead consumers as to the amount of butter in their crusts, because of the construction of the "shortening butter blend" ingredient in their FDA-mandated ingredient statements.  (*Id.* ¶¶ 57-58.)  It is implausible that so many consumers would pick up a Mrs. Smith's® Cobbler, turn over the box and review the ingredient statement, note what Plaintiff considers to be a misleading ordering of ingredients, and on that basis be willing to pay a significantly higher price for the Cobbler, so as to enable Schwan's to charge a market-wide price premium because of the construction of its ingredient statement.

For that matter, given the structure of the grocery industry, it is implausible that Schwan's could have charged a price premium for any of the advertising representations challenged by Plaintiff, including the "Made with real butter" badge or the fine-print "No artificial sweeteners, dyes or flavors" at the bottom of its packaging.  It is undisputed that Schwan's does not sell the Products directly to consumers, but through retailer such as grocery stores.  Plaintiff makes no plausible allegation that Schwan's can determine at what price such stores resell its products.  It is much more plausible that retail price points in grocery stores are dictated by retailers, and a supplier cannot increase its ultimate price to

consumers by some number of cents per product at will, just because it believes it has an attractive marketing claim.  Plaintiff has alleged no plausible story about how the charging of her alleged price premium would be possible, let alone what the premium would be.

### V.      Plaintiff Fails to State a Claim for FDUPTA

To state a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), a plaintiff must plead "(1) a deceptive act or unfair trade practice, (2) causation, and (3) actual damages."  *Molina*, 635 F. App'x at 626-27 (dismissing FDUTPA claim).  "Deception occurs where there is a representation, omission, or practice that is likely to mislead a consumer acting reasonably in the circumstances, to the consumer's detriment." *Id*.  This standard requires a showing of "probable, not possible, deception that is likely to cause injury to a reasonable relying customer."  *Maor v. Dollar Thrifty Auto. Grp, Inc.*, No. 15-cv-22959, 2018 U.S. Dist. LEXIS 168664, at *19 (S.D. Fla. Sep. 30, 2018).   In other jurisdictions, courts have held that they may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).   In so doing, courts consider the entire context of the alleged misrepresentations, including disclaimers and other disclosures elsewhere on the packaging.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (considering both large and small print in ad in dismissing consumer protection claims); *Fermin*, 215 F. Supp. 3d at 211-12; *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 U.S. Dist. LEXIS 107699, at *2 (S.D.N.Y. Sept. 28, 2010) (considering entire label on a food tray, which listed each item on the tray and its relative weight, in dismissing case alleging that the food tray's "net weight" label referred only to one item in the tray).

FDUTPA claims of deceptive advertising have been held to "sound in fraud," which triggers Rule 9(b)'s heightened pleading standard. *See Blair v. Wachovia Mortg. Corp.*, No. 5:11-cv-566-Oc-37TBS, 2012 U.S. Dist. LEXIS 33941, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2011); *Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1381 (S.D. Fla. 2012). With respect to her claims of deceptive advertising, Plaintiff therefore must "set forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Barron*, No. 13-62496-CIV, 2015 U.S. Dist. LEXIS 189625, at *21-22 (S.D. Fla. Mar. 20, 2015), quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). For the reasons set forth in Part II above, Plaintiff has failed to satisfy this pleading standard.

### VI.     Plaintiff Cannot Lodge a Claim for Negligent Misrepresentation

Plaintiff's claim for negligent misrepresentation is inappropriate under these circumstances, in which Plaintiff alleges misstatements by an advertiser to a mass audience of consumers engaging in arm's-length transactions. To establish a claim for negligent representation the plaintiff must demonstrate "(1) misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the representation without knowledge as to its truth or falsity, or must make the representation under the circumstances in which he ought to have known of its falsity; (3) the representor must intend that the misrepresentation induce another to act on it; (4) injury must result to the party acting in

justifiable reliance on the misrepresentation." *Butler v. Yusum*, 44. So.3d 102, 105 (Fla. 2010), citing *Johnson v. Davis*, 480 So.2d 625, 627 (Fla. 1985); *Hoon v. Pate Constr. Co.*, 607 So. 2d 423, 427 (Fla. Dist. Ct. App. 1992). *See also Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993). The case pled by Plaintiff do not fit the facts contemplated by this common-law cause of action.

Moreover, Plaintiff has not met the heightened Rule 9(b) standard. "The Eleventh Circuit has noted that because actions for negligent misrepresentation in Florida sound in fraud rather than negligence, the pleading requirements contained in Federal Rule of Civil Procedure 9(b) apply to such actions." *Garcia,* 43 F. Supp. at 1386. As stated above, Rule 9(b) is satisfied if the complaint sets for "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id.* (citation omitted). Plaintiff has not even attempted to plead the second prong. (*See* Dkt. 48, ¶¶ 122-128.) Plaintiff also has not sufficiently pled the third and fourth prongs. The high burden of Rule 9(b) has not been met and thus, the negligent misrepresentation claim must be dismissed.

## VII.    Plaintiff Fails to State a Claim for Unjust Enrichment

Plaintiff's claim for unjust enrichment must fail because it is duplicative of her fraud and false advertising claims. In Florida, an unjust enrichment claim is not available where it simply replicates another claim—and an adequate remedy lies at law. *See Guerrero v. Target*

*Corp.*, 889 F. Supp. 2d 1348, 1356-57 (S.D. Fla. 2012) (dismissing as duplicative unjust enrichment claim predicated on "same wrongful conduct as [plaintiff's] FDUTPA claim when an adequate remedy at law existed"); *Licul v. Volkswagen Grp. of Am.*, No. 13-61686-CIV-COHN/SELTZER, 2013 U.S. Dist. LEXIS 171627 (S.D. Fla. Dec. 5, 2013) ("Plaintiffs' unjust enrichment claim is a vague catch-all that does no more than incorporate by reference the alleged wrongdoing already addressed by their other legal causes of action, and thus should be dismissed as duplicative").

### VIII. Plaintiff Fails to State a Claim for Breach of Express Warranty or Implied Warranty of Merchantability

Plaintiff has failed to state a claim for breach of express warranty. In Florida, to recover for breach of express warranty, Plaintiff must establish "(1) a sale of goods; (2) an express warranty; (3) a breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach." *Hummel v. Tamko Bldg. Prods.*, 303 F. Supp. 3d 1288, 1298 (M.D. Fla. 2017). Plaintiff alleges that Schwan's expressly warranted, by stating "Made with Real Butter," that the Products contain more than a *de minimis* amount of butter and that the Products "lacked those attributes promised from such products where butter is a significant or predominant portion of the shortening used." (Dkt. 48, ¶ 124.) These allegations wholly fail to allege what the warranty was, and how the warranty was breached. To the extent that Plaintiff is asserting "Made with Real Butter" is such an express warranty of how much butter is in the Product, this claim must be dismissed because "Made with Real Butter" is not an affirmation of fact or promise about anything other than there is real butter in the Product. *See In re Frito-Lay North America All Natural Litigation*, 12-md-2413, 2013 U.S. Dist. LEXIS 123824, at *84-85 (E.D.N.Y. Aug. 29,

21

2013).  To the extent that Plaintiff challenges the absence of attributes allegedly "expected" by consumers, but not expressly stated by Schwan's, then plaintiff again cannot be challenging an *express* warranty.  Because the Plaintiff failed to state a cause of action for an express warranty, this cause of action should be dismissed.

Plaintiff's claim for breach of implied warranty of merchantability, improperly combined into the same claim, must also be dismissed because Plaintiff does not allege that they purchased the Products directly from Schwan's or suffered any personal injury.  Absent privity of contract between Plaintiff and Schwan's, a breach of implied warranty claim cannot be sustained except to recover for personal injuries.  *See Garcia*, 43 F. Supp. 3d at 1388; *Weisblum*, 88 F. Supp. 3d at 296.  The economic injuries alleged by Plaintiff are not personal injuries.  *Garcia*, 43 F. Supp. 3d at 1388 (citing *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) (under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity).

### IX.    Plaintiff Lacks Standing to Seek Injunctive Relief

Plaintiff's request for injunctive relief should be dismissed because Plaintiff's alleged past harm does not confer standing to seek injunctive relief.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  "[Past] exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *Id*. (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).  Numerous District Courts have dismissed claims for injunctive relief in false advertising cases where, as here, the plaintiff is "now aware of the alleged misrepresentations that they challenge" and therefore "there is no danger that they will again be deceived by

them." *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-2484, 2015 U.S. Dist. LEXIS 63464, at *8 (E.D.N.Y. May 14, 2015); *see also Marty v. Anheuser-Busch Cos., LLC, 43 F. Supp. 3d 1333, 1359 (S.D. Fla. 2014) (*"Absent allegations that each plaintiff will likely suffer a real and immediate threat of future injury, the plaintiffs have no standing to seek injunctive relief."); *Barron*, No. 13-62496-CIV, 2015 U.S. Dist. LEXIS 189625, at *32 (S.D. Fla. Mar. 20, 2015); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295-6 (S.D.N.Y. 2015) ("A plaintiff lacks standing to bring an action for injunctive relief when, as here, she does not allege that she will suffer any future injury as a result of defendant's continued conduct"); *Tomasino v. Estee Lauder Cos., Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (denying standing because plaintiff "has made clear that she does not believe the ANR products have the effects advertised by Estee Lauder").

## CONCLUSION

For the foregoing reasons, Schwan's respectfully requests that this Court grant its motion to dismiss Plaintiff's Complaint on all counts.

Dated: June 14, 2019        Respectfully submitted,

          _/s/ August Horvath_
          FOLEY HOAG LLP
          **AUGUST HORVATH, ESQ.**
          New York State Bar No. 2833234
          *Admitted pro hac vice*
          Email: ahorvath@foleyhoag.com
          1301 Avenue of the Americas, 25th floor
          New York, NY 10019
          Telephone: (646) 927-5544

-and –

SHUMAKER, LOOP & KENDRICK, LLP
**MICHELE LEO HINTSON, ESQ.**
Florida Bar No. 604941
Primary Email: mhintson@shumaker.com
Secondary Email: kgrotz@shumaker.com
**THOMAS F. McDONNELL, JR., ESQ.**
Florida Bar No. 113349
Primary Email: tmcdonnell@shumaker.com
Secondary Email: dmazzarella@shumaker.com
101 East Kennedy Blvd., Suite 2800
Tampa, Florida 33602
Telephone:  (813) 229-7600
Facsimile: (813) 229-1660
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 14th day of June 2019, a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Michele Leo Hintson*
Attorney